## BALTIMORE COUNTY, MARYLAND *v.* ARCHWAY MOTORS, INC.

[No. 73, September Term, 1976.]

*Decided March 9, 1977.*

The cause was argued before MOYLAN, DAVIDSON and MASON, JJ.

*Harry S. Shapiro* and *Philip V. Tamburello, Assistant County Solicitors for Baltimore County,* with whom was *J. Carroll Holzer, County Solicitor for Baltimore County,* on the brief, for appellant.

*Christopher A. Hansen* for appellee.

DAVIDSON, J., delivered the opinion of the Court.

On 12 May 1975, in the Circuit Court for Baltimore County, the appellant, Baltimore County, Maryland, sued the appellee, Archway Motors, Inc., for money allegedly due either "on accounts stated between them" (count one), or

under a contract allegedly breached by Archway (count two). Judge John Grason Turnbull denied Baltimore County's motion for summary judgment and granted Archway's motion for summary judgment.

Viewed in the light most favorable to the appellant,[1] the evidence shows that on 29 August 1972, the parties signed a Public Works Agreement in which Archway requested Baltimore County to construct a water main near its property. Section 25 of this agreement provided, in pertinent part:

> "Financial Agreements: After bids for the utilities have been received and *accepted as satisfactory by the County and the undersigned*, the Developer [Archway] will deposit with the County, in cash or certified check, an amount equal to the aggregate cost of the proposed work plus overhead charges as established by the Office of Finance at the time of awarding of contract." (Emphasis added.)

It also provided that the estimated cost of construction was $6,750.

In a letter dated 15 November 1973, Baltimore County notified Archway that bids had been received and asked Archway to contribute $17,044.72. The letter continued:

> "*Upon receipt of your certified check in the above amount,* payable to Baltimore County, Maryland and receipt of the approved allotment, *the subject contract will be awarded.*

> "You are reminded that contract proposals specify that the award of the contract will be within 60 days of the bid date and any delay in compliance with the requests of this letter could

---

1. Dietz v. Moore, 277 Md. 1, 4, 351 A. 2d 428, 431 (1976); Lawless Adm'rx v. Merrick, 227 Md. 65, 70, 175 A. 2d 27, 30 (1961); Sanitary Facilities II, Inc. v. Blum, 22 Md. App. 90, 100, 322 A. 2d 228, 233-34, *cert. denied,* 272 Md. 748 (1974).

result in the refusal by the low bidding contractor to accept the award." (Emphasis added.)

In a letter dated 21 December 1973, Archway refused to pay the requested amount and stated:

"I shall do nothing until I hear from you in regard to the extent of any discrepancy in the water deficit computation. . . ."

In a letter also dated 21 December 1973, Baltimore County notified Archway that the amount of its contribution had been reduced to $11,547.94. This letter additionally stated:

"Upon receipt of your certified check in the above amount, payable to Baltimore County, Maryland and receipt of the approved allotment, the subject contract *will be awarded.*" (Emphasis added.)

Moreover, like its predecessor, it stated that the award of the contract would be within 60 days of the bid date and that any delay in compliance could result in the low bidding contractor refusing to accept the bid.

In letters dated 23 September 1974 and 31 October 1974, Baltimore County requested payment of $11,547.94. In a letter dated 18 December 1974, Archway offered to pay $6,750. Notwithstanding the fact that at some unidentified point in time the contract was awarded and the work completed, Archway never paid any amount to Baltimore County.

I

## Breach of Contract

In granting Archway's motion for summary judgment, the trial court determined that § 25 of the parties' agreement contained a condition precedent which established that Archway would not become obligated to pay until it had accepted the bid. Baltimore County initially contends that § 25 did not create this condition precedent. It maintains that the language of § 25 is ambiguous. Pointing to § 4 of

the agreement, in which the words "condition precedent" were expressly stated, it argues that had the parties intended to create a condition precedent in § 25, they would have done so expressly. It maintains that the absence of these words in § 25 indicates that here the parties did not intend to create a condition precedent.[2]

The Court of Appeals has established the standard by which to determine whether a provision in a contract constitutes a condition precedent. In *Chirichella v. Erwin,*[3] that Court said:

> "A condition precedent has been defined as 'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.' . . . The question whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation. . . . Although no particular form of words is necessary in order to create an express condition, such words and phrases as 'if' and 'provided that,' are commonly used to indicate that performance has expressly been made conditional, . . . as have the words 'when,' *'after,'* 'as soon as,' or 'subject to.' "
> (Citations omitted. Emphasis added.)

Here, § 25 expressly states that an amount equal to the construction cost would be deposited *after* bids were "accepted as satisfactory" by Archway. Notwithstanding the absence of the specific words "condition precedent" in § 25, there is no ambiguity here. The use of the word "after"

---

2. Baltimore County further contends that § 25 cannot be construed as creating a condition precedent if Archway is to be prevented from receiving a benefit for which it did not pay. This contention was neither raised nor decided below and will not be considered here. Maryland Rule 1085.

3. 270 Md. 178, 182, 310 A. 2d 555, 557 (1973).

creates an express condition. Archway was not obligated to pay until it had accepted the bid.

Baltimore County next contends that even assuming the existence of a condition precedent, the trial court erred in granting the motion for summary judgment. It maintains that, despite Archway's failure to transmit a certified check, it nonetheless accepted the bid. It argues that language in Archway's letters dated 21 December 1973 and 18 December 1974, including an offer to pay $6,750 as its "fair share," indicates that Archway knew that a bid had been received by Baltimore County and was concerned, not with the total amount of that bid, but rather with the amount of its contribution. It asserts that it is this evidence which raises an inference that Archway did in fact accept the bid so that the condition precedent was fulfilled. It concludes that, consequently, this evidence creates a genuine dispute as to a material fact.

While the question of whether Archway accepted the bid does involve a material fact, we are not persuaded that the evidence here created a genuine dispute as to that fact. In our view, the evidence does not support an inference that Archway accepted the bid.

Under general principles of contract law, when a method of performance necessary to constitute acceptance of an offer has been prescribed, performance in some other manner does not constitute acceptance. Thus, in *Eshelman Co. v. Friedberg*,[4] the Court of Appeals said:

> "A reply to an offer which alters in any manner the suggested method of performance is not a true acceptance of the offer, but in reality is a conditional or qualified acceptance, which amounts to a counter-offer." (Citations omitted.)

Applying this principle to the question of whether Archway accepted the bid produces a clear result. Here,

---

4. 214 Md. 123, 133, 133 A. 2d 68, 73 (1957). *Accord*, Post v. Gillespie, 219 Md. 378, 383-86, 149 A. 2d 391, 395-96 (1959); First National Bank v. Clark, 61 Md. 400, 408 (1884).

Baltimore County itself prescribed the method of performance by which Archway could accept the bid. In letters dated 15 November and 21 December 1973, Baltimore County notified Archway that the contract would not be awarded until, among other things, Archway's certified check for the requested amount was received. The only possible inference arising from these letters is that Archway's transmittal of a certified check in the requested amount was the prescribed method by which to accept the bid. Archway refused to pay and never did send a certified check. Because the evidence that Archway allegedly was concerned with the amount of its contribution and not with the amount of the bid fails to show compliance with the method of acceptance established by Baltimore County itself, it cannot support an inference that Archway accepted the bid. Consequently, there is no evidence to show that Archway accepted the bid. In the absence of such evidence, there can be no genuine dispute as to that material fact.

Baltimore County further contends that the same evidence shows that Archway waived the condition precedent created by § 25. We do not agree.

In *BarGale Industries, Inc. v. Robert Realty Co., Inc.*,[5] the Court of Appeals said:

> "A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. '[A]cts relied upon as constituting a waiver of the provisions' of a contract must be inconsistent with an intention to insist upon enforcing such provisions.
>
> . . .
>
> 'A waiver may be either verbal or in writing; and it is not necessary that the waiver should be direct and positive. It may result from implication and

---

**5.** 275 Md. 638, 643-44, 343 A. 2d 529, 533 (1975).

usage, *or from any understanding between the parties which is of a character to satisfy the mind that a waiver is intended.* The assent must, however, be clearly established and will not be inferred from doubtful or equivocal acts or language.' " (Citations omitted. Emphasis in original.)

Here, as a condition precedent to liability, Archway had the right to approve the bid before the contract was awarded. Archway's language in its letters of 21 December 1973 and 18 December 1974 was neither sufficiently certain nor sufficiently unequivocal to support an inference that it intended to relinquish that right. At best, Archway's offer to pay $6,750 as its "fair share" indicates an intent to relinquish the right to approve a bid resulting in a maximum liability of $6,750. Under no circumstances can it be viewed as evidence of an intent to relinquish its right to refuse to accept a bid resulting in a liability of $11,547.94. Archway's conduct was not inconsistent with an intention to insist upon enforcing its right to accept the bid. The condition precedent created by § 25 of the contract was not waived.

Additionally, Baltimore County contends that Archway is estopped from asserting the condition precedent as a defense. It maintains that Archway did not inform Baltimore County that it was rejecting the bid, and that, consequently, Baltimore County failed to protect itself against the resultant loss.

In support of its position, Baltimore County relies upon *Laurel Race Course, Inc. v. Regal Construction Co., Inc.,*[6] where the Court of Appeals said:

"As a general rule, mere silence will not raise an estoppel. ... Where, however, the circumstances are such as to require a silent party to speak, so that an injured party may take steps to protect himself against a loss which might otherwise result, the silent party will be estopped from

6. 274 Md. 142, 156, 333 A. 2d 319, 328 (1975).

asserting the defense he would have had but for his silence." (Citations omitted.)

This case is inapposite.

The evidence shows that Baltimore County itself established that a contract would not be awarded until, among other things, Archway's certified check in the amount requested was received. Archway's failure to send the certified check constituted notice to Baltimore County that the bid was not approved and that the contract should not be awarded. Baltimore County had all the information it needed in order to protect itself. Archway was not required to take any affirmative action. Under these circumstances, Archway was not estopped.

## II

## Account Stated

Finally, Baltimore County contends that Archway's failure, for a period of a year, to object to the request for a contribution of $11,547.94, constituted an admission of liability for an existing debt. It maintains that it is entitled to recover on an account stated. It concludes that the trial court erred in granting Archway's motion for summary judgment.

We agree that in order to maintain a cause of action on an account stated, all that need be shown is an admission that the stated sum of money constitutes a present existing debt. Such admission need not be express, but may be inferred. Thus, under appropriate circumstances, a failure within a reasonable time to object to the correctness of a stated sum may be regarded as an admission of liability.[7]

We do not agree that under the present circumstances· such an admission may be inferred. The nature of an account stated has been considered in Maryland. In *Wathen v. Pearce*,[8] the Court of Appeals said:

"In law the term 'account stated' is an artificial

---

7. Lyell v. Walbach, 111 Md. 610, 614-15, 75 A. 339, 341 (1909).

8. 175 Md. 651, 661, 3 A. 2d 486, 491 (1939).

phrase of precise and definite significance. In 1 C.J.S. *Account Stated,* sec. 1, page 693, it is thus defined: 'An account stated is an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance.' *Bullen & Leake, Prec. & Pl.* 52, n. (a); *Alexander's Brit. Stat. (Coe's Ed.)* 65. *An indispensable ingredient of any definition of the term is a definite acknowledgment of a subsisting debt immediately payable to the plaintiff,* 1 C.J.S. *Account Stated,* secs. 1, 14, pages 694, 698." (Emphasis added.)

Similarly, 6 Poe, *Pleading & Practice* [9] states:

"This action is founded upon the implied promise to pay a sum which the defendant has admitted to be due, and hence, it can only apply *to past transactions between the parties, or to some recoverable debt or demand,* with reference to which an account may properly be stated." (Emphasis added.)

Thus, it has been recognized that there can be no liability on an account stated if liability did not previously exist.

Courts in other states have recognized that a failure to object within a reasonable time to the correctness of a stated sum does not raise an inference of an admission of liability where liability did not previously exist. Thus, the Appellate Court of Illinois, Fourth District, has stated: [10]

---

**9.** § 128, p. 159 (6th ed. 1970).

**10.** Conley v. National House Furnishing Co., 292 Ill. App. 558, 11 N.E.2d 828, 830 (1937). *Accord,* In re Merz, 45 F. 2d 558, 561-62 (2d Cir. 1930); Pontin Lighterage Co. v. American Export Lines, Inc., 126 F. Supp. 824, 828 (E.D.N.Y. 1954); Reconstruction Finance Corp. v. Commercial Union of America Corp., 123 F. Supp. 748, 756 (S.D.N.Y. 1954); Trafton v. Young-blood, 69 Cal. Rptr. 568, 442 P. 2d 648, 654-55 (1968); Bucklin v. National

"The rule that an account which has been rendered and to which no objection has been made within a reasonable time is to be regarded as admitted by the party charged as prima facie correct, assumes that there was some indebtedness between the parties, for there can be no liability on an account stated if no liability in fact exists, and the mere presentation of a claim, although not objected to cannot of itself create a liability. . . . An account stated cannot be made the instrument to create an original liability; it merely determines the amount of the debt where liability previously existed."

We agree.

Applying this principle to the instant case produces a clear result. Here, because the condition precedent created by § 25 was not fulfilled, Archway never became liable under the agreement. Under these circumstances, an inference that Archway's failure to object within a year constituted an admission of its liability cannot be employed. Baltimore County's letter of 21 December 1973 cannot create liability where liability did not previously exist. Baltimore County was not entitled to recover on an account stated.

*Judgment affirmed.*

*Costs to be paid by appellant.*

---

Shawmut Bank of Boston, 355 Mass. 338, 244 N.E.2d 726, 728 (1969); National Ass'n of Creditors, Inc. v. Ultican, 190 Wash. 109, 66 P. 2d 824, 826 (1937).